S. H. LANE, plaintiff in error, v. JOHN R. LATIMER, defendant in error.

(Atlanta, June Term, 1870.)

RESCISSION—MISTAKE OR FRAUD—CONTRACT MUST BE RESCINDED IN TOTO.*—When a party seeks to repudiate and rescind a contract for the sale of land on the ground of mistake or fraud:

*Held,* that he must repudiate and rescind the entire contract, that he cannot treat the contract as a nullity so far only as to excuse himself for its non-performance, and at the same time claim the legal right to retain the money paid him for the land under contract, that both parties are bound by the contract, or it is not binding on either of them.

SAME—SAME—RIGHT ACCRUES ON DISCOVERY OF MISTAKE OR FRAUD.—The right of a party to elect to rescind and repudiate a contract on the ground of mistake or fraud, accrues to him on the discovery of the mistake or fraud, and not before.

---

*RESCISSION—CONTRACT MUST BE RESCINDED IN TOTO—RESTITUTION.—"The rule which prescribes the duty of the party seeking to rescind the contract is, that the one proceeding to rescind must either give back or offer to return whatever of any value to himself or the other he has received under the contract, because there cannot be a part affirmance and a part rescission. Lane v. Latimer, 41 Ga. 171; Miller v. Cotten, 5 Ga. 341; Glover v. Green, 96 Ga. 126, 22 S. E. Rep. 664; Civil Code, § 3712. "Justice Bleckley, in the case of Summerall v. Graham, 62 Ga. 729, tersely said: 'Restitution before absolution is as sound in law as in theology; and that doctrine prevents an ex parte rescission by the plaintiff without restoring the defendant to his original situation.'" Harden v. Lang, 110 Ga. 395, 36 S. E. Rep. 100.

Lane v. Latimer

Money had and Received. Contracts. Evidence. Before Judge Andrews. Hancock Superior Court. April Term, 1870.

*On the 22d of January, 1863, Latimer conveyed to Lane certain land in said county, in consideration of Lane's note for $2,600 00, of that date, due the 25th of December, 1863, payable "in currency bankable at par in the banks of Savannah or Augusta." On the 27th of July, 1863, Lane conveyed said land to Laurena Tye, executrix of her husband and her children, by name, taking her note for· the same amount, and payable at the same time with Lane's note to Latimer.

These notes were outstanding at the close of the late war, and the said three parties, on the 22d of September, 1866, submitted to arbitration, as follows: "The said John R. Latimer having sold the said tract in dispute to the aforesaid S. H. Lane, and he, the said Lane, having sold the tract to the aforesaid Mrs. Tye; now, whereas, the aforesaid S. H. Lane and Mrs. L. Tye, have erected upon the aforesaid premises certain buildings, since the purchase of the same by them, and whereas, the said John R. Latimer agrees to retake the aforesaid premises, paying for them a valuable consideration. Now, the real matter in dispute is not in reference to the land, but in reference to the value of the buildings erected thereon, and in reference to the rent of the premises for the last three years." On the 2d of October, 1866, the arbitrators adjudged said improvements to be worth $450 00, and that "in the settlement and trade between the parties in the retaking of the land by John R. Latimer," nothing should be allowed for rent.

On the 30th of January, 1867, Latimer sued Lane on his $2,600 00 note aforesaid. Latimer tendered said $450 00 to Lane and Mrs. Tye, and insisted on possession of the land but Mrs. Tye would not give possession. Latimer filed a bill against her, reciting the foregoing and praying that she be compelled to give Latimer possession pursuant to said award. In it he averred that Lane sold the land to Mrs. Tye. Pending the action, Lane and Latimer agreed in writing, "to settle the land difficulty" between them by Latimer's agreeing to pay Lane $2,125 00 for said land, and *Lane's agreeing to make Latimer a good and sufficient title thereto, when said bill filed by Lane against Mrs. Tye was decided. And on the 14th of January, 1868, Latimer delivered to Lane the following paper.

"$2,125 00. Received of S. H. Lane, twenty-one hundred and twenty-five dollars, in payment for five hundred acres of land, known as the Tye place, possession to be given when the suit at law concerning the place, now pending, is decided. January 14th, 1868.                                    J. R. Latimer."

Said bill in equity was demurred to, and the demurrer was overruled. Without any trial, Latimer dismissed this bill in April, 1869.

On the 16th of September, 1869, Lane sued Latimer for $2,125 00, averring that on the 30th of December, 1867, Latimer fraudulently represented to him that he had an equitable right to, the title to said land, and that Lane, knowing the land and trusting Latimer's representations as to his rights, agreed to buy from him said land, and on the 14th of January, 1868, paid Latimer $2,125 00 for it, taking the receipt aforesaid; that Latimer knew, on the 30th of December, 1867, that he had no equitable right to the title in said land; that Latimer fraudulently continued his bill aforesaid (it being the "suit at law" alluded to in said receipt,) and finally voluntarily dismissed it, because he had no equitable right to title to said land; that . thereupon Lane demanded his $2,125 00 back, but Latimer to pay it, wholly refused to his damage, etc.

Latimer pleaded that his promise to give possession of said land was based upon said agreement of the 22d of September, 1866, in which Lane represented said land to be in possession of Mrs. Tye solely, and upon the award made under said agreement, and his offer to pay said $450 00. At said time his said bill was pending, and Lane had told him that nothing was in the way of the specific performance prayed for, but the indisposition of Mrs. Tye to regard her agreement, and at the time of said promise to give him possession, Lane told him that Linton Stephens had said that the wished-for decree was certain; that Lane knew that Latimer's *promise of said possession was based upon the belief that Mrs. Tye would give possession, and that his failure to deliver possession resulted from his inability to do so, and that that inability was caused by Lane's failure to perform his agreement; that his expectation of being able to enforce the performance of said agreement against Mrs. Tye, was founded solely on Lane's fraudulent representation that Mrs. Tye solely had possession of said land; whereas, in fact, the land belonged to her as executrix of her husband and to her named children, and was in their joint possession under said deed from Lane; that these children were not parties to said agreement of the 22d of September, 1866, and therefore they could not be compelled to perform. When this last cause was called for trial, an order was first taken dismissing the suit brought by Latimer against Lane, on the $2,600 00 note.

Plaintiff's counsel read in evidence the said receipt, said agreement of the 30th of December, 1867, said bill in equity, the demurrer, etc., with the order dismissing the same. A demand and refusal of title and possession of said land, and that said bill was the "suit at law" alluded to in the receipt, were admitted by defendant. The defendant's counsel read an admission by plaintiff that he did tell defendant and his counsel that he made a deed to said land to Mrs. Tye, when in fact it was made to her as executrix of her husband and to

her children, therein named. It was then shown that upon the discovery that the deed was so made, Latimer's counsel was of opinion that there could be no recovery in said bill because of said interest of the children, and thereupon and for that reason, the bill was dismissed, after the demurrer was overruled, and before the pleas were heard or any answer filed. The deeds from defendant to plaintiff, and from plaintiff to Mrs. Tye, as executrix, and her children, were read in evidence. Defendant then testified, that in a few days after the maturity of his $2,600 00 note he tendered to Lane the sum in Confederate treasury notes, and that he refused to accept them in payment, (that, in addition to the consideration of the land expressed in writing, in the contracts of the 30th of December, 1867, the 14th of January, *1868, and said submission, it was also verbally agreed that the note for the original purchase-money was to be given up by him to plaintiff.) This testimony in ( ) came in over the objection of plaintiff's counsel. It was shown that said note was never delivered up, and that suit on it had pended till just before this trial. Defendant's counsel also read in evidence said submission and award. Mrs. Tye's son then testified that his mother, in November, 1866, and since, refused to comply by giving possession, because (Lane had promised to get her another home and had not), he further testified that Mrs. Tye had paid Lane for the land in Confederate currency. This evidence in ( ) the Court ruled out when he came to charge the jury. It was admitted that defendant was ready and willing to comply with said award. In rebuttal, Lane testified that he bought the land from Latimer for Mrs. Tye, and so wrote Latimer, and offered him Confederate currency in payment therefor; that Latimer knew when he sold him the land, that it was being bought for Mrs. Tye, but he did not deal with Latimer as Mrs. Tye's agent; that he had no personal interest in the land; never received any benefit from it in any way; that he received from Mrs. Tye the amount of the note due to him in Confederate currency about the 6th of January, 1864, and tendered the same to Latimer, who refused to receive it; that said currency was then bankable at par in Augusta and Savannah; that he subsequently funded said currency, on account of Mrs. Tye, with Turner as Confederate States agent; that Mrs. Tye afterwards drew $800 00 of it to buy a horse for her son, and the balance was applied to the payment of her taxes; that there was a dispute as to whether he received said currency from her as her agent to pay Latimer's note on Lane, or in payment of her note to him of the same amount, and upon that point a suit is now pending between Mrs. Tye and Lane. He further testified that when he told Latimer that the deed was made to Mrs. Tye, he had forgotten the form of the deed, as he bought it at the request of Mrs. Tye, although he knew the money to pay for it was to

be raised from the property of her husband's estate, of which she was executrix, and he so informed *Latimer at the time of the purchase, and that the money was in fact so raised. It was shown by letters of defendant that the original note was to be paid in Confederate currency. It was shown by a bank agent that such currency was bankable at par in Augusta and Savannah on the 6th of January, 1864. The table of Barber & Son, showing the relative value of such currency and specie, was used as evidence. It was admitted that the land was then worth $2,500 00. There was no controversy as to the facts.

The Court charged the jury, among other things, that this case turned upon the point whether plaintiff had informed defendant, whether intentionally or by mistake, that he had made a deed for the land to Mrs. Tye only, when, in fact, he had conveyed the land to her as executrix and her children, (by reason of which Latimer was prevented from giving possession to Lane,) if he did so inform him, plaintiff could not recover; that this cause is controlled by the principle of law, that when one of two innocent persons had to suffer by an act, the one in fault must bear the loss; and also that the legal effect of the contract of the parties as proven was to discharge the original note of Lane to Latimer, whether it was delivered upon or not. The jury found for the defendant. Plaintiff's counsel moved for a new trial upon the grounds that the Court erred in admitting the parol evidence of a consideration between the parties other than that expressed in said written agreements, in charging as aforesaid, and because the verdict is contrary to the law and evidence. The new trial was refused, and error is assigned on each of the grounds for a new trial.

Toombs & DuBose. C. W. DuBose and J. T. Jordan, for plaintiff in error, said if defendant was prevented from giving possession by the fraudulent representation of plaintiff, he can only rescind the contract and pay back the money. 2d Parsons on Con., 192-3, 278, 782-8; 5th East., 449: 2d Young and J., 278; 3 Greenleaf, 30; 1st Denio, 69; 4th Man and G., 903; 1 M. and W., 231; 3 Wend R., 236; 8 Metcalf, 550; 23 Pick R., 283; 4 Mass. R., 502; 3 Foster, *519; 1 Metcalf, 557. He has waived the right to rescind, if he had it: 2 Parsons on Con., 279, and notes: Blydenburg v. Welsh, Bald., 331; 8 Barbour, 10; 1 A. and E., 40; (28 E. C. L.) The misrepresentation was not material, as in no view could Mrs. Tye have been compelled specifically to perform: 2 Parsons on C., 207; 5 Barbour, 91; R. Code, sec. 3134.

Linton Stephens. E. H. Pottle, for defendant. The parol evidence was admissible: R. Code, sec. 3750. Defendant was excused from performance by said misrepre-

sentation; Chitty, on C., 633; R. Code, sec. 2832; 2 Parsons on C., 676; Borden v. Borden, 5 —— R., 72. The party in fault cannot abandon the contract: Ch. on C., 636, 587. If plaintiff kept defendant from performing, defendant can keep the money as if he had performed: Addison on C., 879, 1121.

## WARNER, J.

It appears from the record in this case, that on the 30th day of December, 1867, Lane and Latimer executed an agreement in writing, reciting that they had that day agreed to settle the land difficulty between them on the condition therein named, (to-wit:) that said Lane agrees to pay to Latimer $2,125 00 in payment for a tract of land which Mrs. Laurena Tye now resides on; the said Latimer agrees to make the said Lane a good and sufficient title when the suit is decided, now pending between said Latimer and Mrs. Laurena Tye. It also appears, that, on the 14th day of January, 1868, Lane paid Latimer the $2,125 00 for the land, and took his receipt therefor. Afterwards, in September, 1869, Lane sued Latimer to recover back the $2,125 00 paid him for the land, alleging that he had refused to make him a title to the land, in accordance with his written agreement. To this action, Latimer filed a special plea, setting forth various grounds of defence. On the trial, it appears from the evidence in the record, that in May, 1863, Lane purchased the land from Latimer for Mrs. Tye, for the sum *of $2,600 00; gave his note to Latimer for that amount, payable in currency bankable at par in the banks of Savannah or Augusta, which was secured by a mortgage on the land. Latimer conveyed the land, by deed, to Mrs. Tye, as executrix of the estate of Daniel Tye, and to her five children by name. In January, 1867, Latimer sued Lane on the note given for the land. It appears from the evidence in the record, that Mrs. Tye paid Lane for the land in Confederate currency, and that Lane tendered the same currency to Latimer in payment of his note, the same being bankable in Savannah and Augusta at that time, which currency Latimer refused to receive.

Afterwards, it appears the parties agreed to rescind the land trade; Latimer was to take the land back and give up to Lane his note given therefore, and they referred the only question then in dispute between them, as to the rent of the land and improvements made thereon, to two arbitrators, who made their award on the 2d day of October, 1866, awarding and deciding that the value of the improvements made on the land was $450 00, and that in the settlement of the trade between the parties, in the re-taking of the land by Latimer, nothing should be allowed for rent. but the said sum named for improvements. The note of Lane and the mortgage to secure the payment thereof, appears to have remained in

the possession of Latimer or his counsel. On the 9th of March, 1868, Latimer filed his bill on the equity side of the Court, against Lane and Mrs. Tye, praying that they might be decreed to execute to him a deed to the land. It appears from the record, that the sale of the land, made by Latimer to Lane, after the recision of the original contract, and after the award of the arbitrators, as to the improvements and rent of the premises, was made on the 30th of December, 1867, and that Lane paid to Latimer the consideration of his last sale of $2,125 00, on the 14th of January, 1868, which was prior to the time of the filing of the bill for specific performance. It also appears from the evidence in the record, that at the time the parties agreed to rescind the original contract, and at the time of the arbitration, and at the time of making the last *contract, Latimer did not know that Lane had conveyed the title to the land to Mrs. Tye, as the executrix of her deceased husband and to her children, but it is admitted that Lane told Latimer that he had conveyed the land to Mrs. Tye; that upon the discovery of this fact, he dismissed his bill for specific performance, and on the trial of the case in the Court below, claimed that, in consequence of the misrepresentation of Lane, as to the title conveyed to Mrs. Tye, it was such a fraud or mistake on the part of Lane, as would authorize him to rescind the contract, or excuse him for its non-performance. The Court charged the jury in substance, "that if Lane had informed Latimer, whether intentionally or by mistake, that he had made a deed to Mrs. Tye only, to the land, when in fact he had made it to her as executrix and for her children, by reason of which Latimer was prevented from giving possession to Lane, and if he had so informed him, plaintiff could not recover; that this case was controlled by that principle of law, that where one of two innocent persons had to suffer by an act, then the one in fault must bear the loss, and that the legal effect of the contract of the parties as proven, was to discharge the original note of Lane to Latimer, whether it was delivered upon or not."

This charge of the Court, in view of the facts contained in the record, was error. Inasmuch as Latimer sought to repudiate the contract for the sale of the land to Lane, on the ground of fraud or mistake, he must repudiate it entirely; he cannot treat the contract as a nullity so far only as to excuse himself for its non-performance, and at the same time claim the legal right to retain the money paid him by Lane for the land under that contract. The contract is binding on both the parties, or it is not binding on either of them. If Lane is not entitled to have the land, under the contract, then Latimer is not entitled to have the money paid him by Lane for the land, under the contract. The legal effect of the recision of the contract between the parties, is to place them in the same position which they originally occupied before there was any recision of any contract in respect to the land. Miller v. Cotton, 5th Georgia Reports, 341;

180 Code, 2809. *That is to say, Lane is entitled to recover the money back, which he paid Latimer for the land, on the 14th January, 1868. And Latimer, on the discovery of the fraud or mistake in the conveyance of the title to the land by Lane to Mrs. Tye and her children, had the right to enforce the payment of his note and mortgage, made and executed by Lane to him for the land, on the 23d day of June, 1863. His right to elect and repudiate the subsequent contracts made on the ground of fraud or mistake, accrued to him on the discovery of the fraud, or mistake, and not before.

Let the judgment of the court below be reversed.