## GRASINGER v. LUCAS et al.

In an action for broker's commissions, evidence **held** sufficient to go to the jury on the question whether the husband of the person owning a stock of goods exchanged for land through plaintiff's efforts was authorized by her to make the contract with plaintiff.

While ordinarily a person cannot act as agent for both parties to a transaction, and courts will view with suspicion the acts of an agent thus acting in a dual capacity, yet, where a broker acting as an agent for one party in the exchange of property was in the employ of a land company of which the person acting for the other party to the transaction was a member, but was authorized to act independently in transactions of his own and did so act, he was not precluded from recovering a commission for his services, as representing both parties to the transaction, without their knowledge or consent, where he acted merely as a middleman to bring the parties together, leaving them to make their own contract, and does not act against the interest of his employers, and the parties actually make and conclude their contract.

Where plaintiff has a cause of action which may be defeated by subsequent transactions that avoid the original contract relied on, such matter in avoidance must be pleaded to defeat plaintiff's recovery, but defendant, without pleading it, may prove on cross-examination any fact which would defeat plaintiff's cause of action under the original contract itself, and hence, in an action for broker's commissions evidence that plaintiff was also employed by land company of which the broker representing the other party to the transaction was a member offered to show that he was agent for both sides, and so not entitled to his commission, was admissible, though not pleaded as a defense.

A motion for a directed verdict presents a question of law only which will be determined on appeal upon the evidence as presented by the bill of exceptions, and no motion for a new trial is necessary, though the appeal be also taken from an order denying a new trial, before the order had been filed in the clerk's office.

(Opinion filed, Oct. 12, 1909.)

Appeal from the Circuit Court, Spink County. Hon. CHAS. S. WHITING, Judge.

Action by A. M. Grasinger against C. F. Lucas and another. From a judgment for plaintiff and an order denying a new trial, defendants appeal. Affirmed.

*Bruell & Morris,* for appellants.

An agent will never be allowed to place himself in a position in which his duty and interest conflict, or be permitted to make a secret profit out of his agency. 1st Ed. Ency. of Law, Vol. 1, page

372; Raisen v. Clark, 20 Am. R. 66; Bell v. McConnell, 41 Id. 528; Bollman v. Loomis, 41 Conn. 581; Campbell v. Baxter, 60 N. W. 91.

The law avoids contracts and promises made with a view to place one under wrong influences, those which offer him a temp-- tation to do that which may affect injuriously the rights and in-- terests of third persons, and if such advice and solicitation thus understood to be pure and disinterested, may justly offer their mercenary ·motive, they would produce all the consequences of absolute misrepresentation and falsehood.   Fuller v. Dane, 18 Pick. 481; Levy v. Spencer, 33 Pac. 166.

*Sterling & Morris,* for respondent.

Where the middle man receives compensation from both parties, or where he has a contract to receive commission from both, he may not be deprived of such commission by either, if his employment is simply to bring the parties together, leaving them to fix prices, arrange terms and close the deal. Leathers v. Camp- bell, 51 L. R. A. 51.

CORSON, J.   This case is before us on appeal by the de- fendants from a judgment in favor of the plaintiff and order denying a new trial. · It is alleged, in substance, in the complaint that the plaintiff at the special instance and request of the defend- ants was the agent of said defendants for the sale of certain stock of goods, wares, and merchandise owned by them, and that the plaintiff entered into and fully consummated, a deal whereby said goods, wares, and merchandise were exchanged for 320 acres of real· property situated in Faulk county; that, by the terms of the contract of agency, the plaintiff was to receive a commission of 5 per cent. of the value of said stock of goods and that the same was of the value of $5,000, and plaintiff had not been paid any part of his said commission, except the amount of $15, and de- mands judgment for the sum of $200.   The defendant Jennie Lucas in her separate answer admits that she was the owner of the stock of goods and merchandise, and that she is the owner of the half section of land received in exchange for the same, but denies that the plaintiff was employed by her in any capacity

whatsoever in consummating the transaction whereby the said defendant became the owner of said land, denies that she is indebted to the plaintiff in any sum whatever, and denies that she ever employed the plaintiff to act for her in the consummation of any sale of the goods or merchandise, and denies that said plaintiff was ever employed by any one for this defendant to act for her in the consummation of said trade. The defendant C. F. Lucas in his separate answer admits that Jennie Lucas was the owner of the stock of goods and merchandise described, denies that he is in any manner indebted to the plaintiff for the sum of $200 or any other sum, and denies that he ever made any contract with the said plaintiff as alleged in his complaint.

It is disclosed by the evidence that Jennie Lucas was the owner of the stock of goods exchanged for the half section of land, and that the defendant C. F. Lucas was her husband and generally managed the business in connection with the store and stock of goods; that the said C. F. Lucas employed the plaintiff to negotiate the sale of said stock of goods, and agreed to pay him therefor a commission of 5 per cent. on the value of said stock of goods; that the plaintiff found a party willing to exchange the half section of land in Faulk county for the stock of goods; that the value of the stock of goods transferred, including fixtures, was $3,500; that he had received $15 on account of commissions, leaving a balance due him of $160 as found by the jury. It was further disclosed by the evidence that the plaintiff had no conversation, agreement, or contract with the defendant Jennie Lucas in regard to the transaction, but that all of his negotiations were had with C. F. Lucas, the husband. But the plaintiff introduced in evidence the bill of sale of the stock of goods made by C. F. Lucas and Jennie Lucas, parties of the first part, and H. Ralph Taylor, party of the second part, transferring the said stock of goods to the said Taylor, which was executed under the hand and seal of Jennie Lucas and C. F. Lucas, and it will be observed by the admissions of Jennie Lucas that she was the owner of the stock of goods, and that by means of the exchange she became the owner of the half section of land. It was further disclosed by the evidence of the plaintiff on his cross-examination that at

the .time he made the negotiation for the sale of the defendants' stock of goods to Taylor he was connected with the Jim River Land Company at Ashton at a salary of $50 per month, and that one Clark, who conducted the negotiations on the part of Taylor, was a member of the firm; that Mr. Clark showed the Taylor land to Mr. Lucas and closed the deal between the Lucases and Taylor; that the deal worked between the plaintiff and Clark—that is, Clark and the Jim River Land Company worked on one side for Mr. Taylor, and the plaintiff represented the Lucases. He further stated that, while he was in the employ of the Jim River Land Company, he was also permitted to make trades on his own account when he could do so; that he received nothing from the Jim River Land Company or Mr. Taylor on account of the deal, and had no knowledge as to what Mr. Clark received from Taylor as commission from him. At the conclusion of the plaintiff's evidence a motion was made in behalf of Jennie Lucas for a verdict in her favor on the ground that there was no evidence connecting her with the transaction, and that there was no testimony showing that the plaintiff was in any manner employed by her or for her, and for the further reason that the alleged claim of agency on the part of the plaintiff, so far as the defendant Jennie Lucas is concerned, was an act of bad faith on the part of the plaintiff, the undisputed evidence showing that he was in the employment of one S. L. Clark, who was acting as the agent of H. R. Taylor in the purchase of the stock of goods in question. This motion was denied and an exception taken.

It is contended by the appellant:   (1) That, as no evidence was offered connecting the defendant Jennie Lucas with the transaction, the case should have been dismissed as against her, and the court erred in refusing to direct a verdict in her favor. (2) That, inasmuch as the undisputed evidence of the plaintiff shows he was acting in a dual capacity in representing both parties to the transaction without their knowledge or consent, the agreement between him and Lucas for the payment of commission was void, and the plaintiff could not recover, and therefore a verdict in favor of both of the defendants should have been directed. (3) That the court erred in allowing the plaintiff to answer the ques-

tions set forth in the second assignment of errors under errors of law. That the court committed error in instructing the jury as follows: "If you should find 'from the evidence that regradless of his contract with the land company that he occupied a position where he could work or did work for the interest of the Lucases, * * * there is no such dual position as would prevent his recovery."

We are of the opinion that there is no merit in the first contention, for the reason that it was shown that Jennie Lucas was the owner of the stock of goods, and that by the exchange. she became the owner of the half section of land, and that the business in connection with the stock of goods was transacted by the husband; that she joined her husband in the bill of sale and received the land as the proceeds of such sale; and that there was evidence tending to prove that she stated that her husband, C. F. Lucas, was managing her business for her. In the absence of any denial, therefore, of either Jennie Lucas or her husband, C. F. Lucas, that he was acting as her agent and transacting her business as such, there was sufficient evidence to warrant the jury in finding that Lucas in making the contract with the plaintiff was fully authorized by her to enter into the same, and the court would not have been justified in directing a verdict for the defendants.

The second contention of the appellant is also untenable for the reason that it clearly appeared from the evidence of the plaintiff and was undisputed, that while in the employ of the land company, of which Clark was a member, he was authorized to act independently of such company in transactions of his own, and it is clear from his evidence that in making this deal for the defendants he was acting in his individual capacity, and not as agent for the land company. We are of the opinion, therefore, that the court correctly instructed the jury that, if they should find from the evidence that the plaintiff occupied a position where he could work for and did work for the interests of the Lucases, then the plaintiff could recover. While it is true that ordinarily a party cannot act as agent for both parties, and that courts will view with suspicion any acts of an agent who thus acts in a dual ca-

pacity, yet where, as in the case at bar, the contract of the agent was simply to bring the parties together, leaving them make their own contract, and does not act against the interests of the party employing him, and the parties do make and conclude the contract, we are of the opinion the agent is entitled to his commission. It is quite clear from the testimony of the plaintiff, which is undisputed, that he was not employed as an ordinary agent to sell and dispose of the stock of goods, but that he acted in the capacity of what is known as a middleman, to bring the parties together, leaving them to make their own contract. In such a case the rule applicable to agents generally does not apply.

In a note to Leathers v Campbell, 45 L. R. A. 51, the learned author says: "Where there is an agreement to pay a middleman for services of value rendered honestly entered into, it cannot be avoided on the ground that another person with distinct and independent interest has agreed by a separate contract to pay for the same services, and, if the broker only undertakes to bring the parties together so that they may make a trade if they choose without his interference in the contract itself as the agent of either party, he is entitled to compensation from both on an arrangement from each." In support of this proposition the author cites a very large number of authorities. And in the case of Childs v. Ptomey, 17 Mont, 502, 43 Pac. 714, the Supreme Court of Montana, speaking by Mr. Justice Hunt, says: "Where, however, there is an agreement to pay a middleman for services of value rendered, honestly entered into, it cannot be avoided on the ground that another person with distinct and independent interests has agreed by a separate contract to pay for the same services. If the broker only undertakes to bring the parties together, so that that they may make a contract, if they choose, without his interference in the contract itself, as the agent of either party, he is entitled to compensation from both on an agreement from each. Rapalje on Real Estate Brokers, p. 176; Rupp v. Sampson, 16 Gray (Mass.) 398; Herman v. Martineau, 1 Wis. 151. In the case at bar it clearly appears from the evidence of plaintiff, which is undisputed, that the defendant C. F. Lucas asked the plaintiff if he ever made deals in exchanging property, and, being answered

in the affirmative, he said, "I would like to make a deal of my stock of goods;" that plaintiff informed him that he thought he had such a purchaser, if he, Lucas would take land in part payment, and, Lucas replying that he would do so, the plaintiff subsequently gave him the name of party who had the land in Faulk county, and the description of the same, and the defendant Lucas examined the land, and subsequently he and the owner, Taylor, concluded the contract by which the exchange was made. It will thus be seen that the plaintiff in the transaction between the defendants and Taylor was acting in the capacity of a "middleman" in bringing the two parties together, and that in making the contract for the sale of the stock of goods the defendants made the transaction directly with Taylor, and, so far as the evidence discloses, the plaintiff took no other part in the transaction than bringing the defendants and Taylor together. Assuming, therefore, that the plaintiff was acting as an employe of the land company as well as for the defendants, he would still be entitled to his commission agreed to be paid by the defendants for bringing the parties together, which resulted in the contract entered into between the defendants and Taylor under the authorities above cited.

It is contended by the respondent that the evidence in regard to the employment of the plaintiff by the Jim River Land Company was inadmissible, for the reason that the same had not been pleaded as a defense to the action. But this contention is untenable, as this court has held that the defendant may prove on cross-examination any fact which would defeat the plaintiff's cause of action. Novotny v. Danforth et al., 9 S. D. 301, 68 N. W. 749; Wendt v. Chicago, St. P., M. & O. R. R. Co., 4 S. D. 476, 57 N. W. 226. If, therefore, the fact as claimed by the defendant that the plaintiff was acting and receiving pay from both parties constituted a defense to the action that would defeat plaintiff's right to recovery, it was proper to show such facts on cross-examination. Where the plaintiff has a cause of action, but which may be defeated by subsequent transactions that avoid the original contract, then such matter in avoidance must be pleaded by the defendant in order to defeat the plaintiff's right of recovery, and evidence tending to show such acts constituting an avoidance

of the contract must necessarily be pleaded to enable the defendant to make proof of the same as a matter of defense. In the case at bar, therefore, the admission of the evidence brought out on cross-examination of the plaintiff was clearly proper under their view of the case that the employment of the plaintiff by the land company would defeat his right of action.

It is further contended by the respondent that by the abstract prepared by the appellants the errors relied on for a reversal of the judgment were not sufficiently specified in the assignment of errors. But in our view of the case there is no merit in this contention, for the reason that a motion for the direction of a verdict presents a question of law only, and that question is sufficiently presented by the assignment of errors in this case.

It is further contended by the respondent that at the time the appeal was taken the order denying a new trial had not been filed in the clerk's office, and therefore that the appeal from that order was premature. But on a motion for a direction of a verdict no motion for a new trial is necessary, as the motion presents a question of law that will be determined by this court upon the evidence as presented by the bill of exceptions, and no motion for a new trial is necessary in such case. Dunn v. National Bank of Canton, 11 S. D. 305, 77 N. W. 111.

Finding no error in the record, the judgment of. the circuit court and order denying a new trial are affirmed.

WHITING, J., taking no part in this decision.